IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GUSTAVO RIVERA,
          Plaintiff,

v.                                                Civil Action No. 3:24cv646

U.S. DEPARTMENT OF DEFENSE,
          Defendant.

## OPINION

The plaintiff, Gustavo Rivera, works for the Naval Surface Warfare Center, Dahlgren Division, part of the United States Department of Defense ("DoD"). Rivera now sues the defendant, asserting that DoD discriminated against him, retaliated against him, and created a hostile work environment due to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* Rivera also presents discrimination and retaliation claims in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*

DoD has filed a motion to dismiss, asserting that Rivera has failed to state a claim. (ECF No. 28.) Because Rivera has not plausibly pleaded racial and age discrimination, nor a hostile work environment due to racial or age discrimination, the Court will grant the motion to dismiss in part and will dismiss Rivera's Title VII discrimination claim, ADEA discrimination claim, and hostile work environment claim as it relates to discrimination.[1] The Court, however, will deny the motion to dismiss with respect to Rivera's Title VII retaliation claim, ADEA retaliation claim, and hostile work environment claim as it relates to the alleged retaliatory conduct.

---

[1] Rivera asks for leave to amend his Complaint should the Court grant the motion to dismiss for any of his claims. The Court declines to do so.

## I. <u>FACTS ALLEGED IN THE COMPLAINT</u>[2]

Rivera, a Hispanic man born in 1967, worked as a Senior Scientist & Technical Manager ("SSTM") at the Naval Surface Warfare Center, Dahlgren Division. Rivera alleges that, at all times stated below, he was the only Hispanic SSTM. Rivera experienced issues in the workplace starting on October 22, 2019, when he confronted the direct supervisor of the SSTMs, John Fiore, during Rivera's 2019 year-end performance evaluation. Rivera felt that Fiore "baselessly questioned" Rivera's job performance and made "false accusations" about his work. (ECF No. 1 ¶ 19.) That same day, in response to the poor performance review, Rivera emailed a "formal reclama"[3] to Fiore and another supervisor, Aaron Miller. (*Id.* ¶ 20.) In November 2019, Rivera, Fiore, Miller, and Darren Barnes, the deputy technical director, met to discuss Rivera's reclama, but they did not resolve Rivera's claims.

A few months later, in April 2020, Rivera transferred to a new SSTM department. In this new department, Fiore made Rivera the co-lead on the Intelligent Automation Strategic Thrust, one of the "six high priority thrusts of Dahlgren's FY21-FY25 Strategic Plan." (*Id.* ¶ 24.) Fiore

---

[2] In evaluating the defendant's motion to dismiss, the Court relies on the facts from Rivera's Complaint, (ECF No. 1), and the Equal Employment Opportunity Commission ("EEOC") complaints attached to DoD's motion to dismiss filed in the District Court for the District of Colombia, (ECF No. 11-3). The Court is "generally limited to a review of the allegations of the complaint itself" when considering a motion to dismiss. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). But the Court can "also consider documents that are explicitly incorporated into the complaint by reference . . . [and] document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint." *Id.* Here, the defendant attached two of Rivera's EEOC complaints to its first motion to dismiss that it filed in the District Court for the District of Columbia. Rivera refers to these EEOC actions in his Amended Complaint, and the EEOC complaints are integral to his allegations. The Court, therefore, will consider the EEOC complaints in addition to Rivera's factual allegations.

[3] A "reclama" is a phrase particularly used in the military to "request the reconsideration of a decision or a change in policy." *Reclama*, Merriam-Webster, https://www.merriam-webster.com/dictionary/reclama#citations (last visited November 26, 2024).

2

chose Rivera to lead the thrust due to Rivera's "broad expertise and ability to address complex problems." (*Id.* ¶ 26.) On August 19, 2020, Rivera emailed an engineering paper about his "AI Systems Engineering approach" to Fiore; Barnes; Michael Till, another supervisor; and others. (*Id.* ¶ 30.) Fiore gave Rivera "positive remarks" about the paper. (*Id.*) But a week later, on August 30, 2020, Till notified Rivera that Fiore removed Rivera from the project with no explanation. On September 11, 2020, Rivera met with Barnes to complain about his removal from the project. Barnes told Rivera to either "speak with [Fiore] directly or focus on other work." (*Id.* ¶ 32.) Rivera chose to focus on other work "for fear of reprisal." (*Id.*) Rivera believes that Fiore removed him from the project due to Rivera's 2019 reclama.

On November 9, 2020, Till assigned a different strategic plan project ("UxAS Plan") to two of Rivera's co-workers. Rivera assisted those co-workers in developing the UxAS Plan. During a preliminary presentation of the UxAS Plan to supervisors in December 2020, Rivera proposed that the team finish the "remaining details of the plan" and submit it by the end of February 2021. (*Id.* ¶ 36.) Fiore agreed and told the team that they did a "good job." (*Id.*)

Also in December 2020, Rivera received a lower organizational contribution ("OC") score for FY20, which affects end-of-year bonuses. His bonus "fell more than 50 percent of that from FY19 and nearly 70% less than FY18." (*Id.* ¶ 38.) Rivera only received a bonus of $1,500 in 2020, versus his younger, Caucasian counterparts, who received "anywhere from 6-10 thousand dollars in bonuses annually." (*Id.* ¶ 39.) On January 28, 2021, human resources informed Till and other supervisors that "there were issues in calculating [OC] scores for SSTMs." (*Id.* ¶ 42.) Jeff Dodd, the deputy department head, told Rivera that human resources would fix the scoring issue. Dodd "admitted that OC scoring contained a technical error and the Agency's management was well aware of the issue but failed to act." (*Id.* ¶ 43.) On February 10, 2021, Rivera met with John

3

Seel, head of Rivera's department, to discuss the technical errors of the OC score. During that meeting, Seel "threatened" Rivera's employment by saying that Rivera's "'job [was] at-risk'" and that Rivera "was 'not performing at the level of an SSTM' based on conversations [Seel] had with [Fiore]." (*Id.* ¶¶ 45–46.) No one ever corrected Rivera's OC score. Rivera initiated an EEOC complaint with an EEOC counselor on February 12, 2021, asserting race and age discrimination by Seel and Fiore, as well as reprisal. (*See* ECF No. 11-3, at 14; ECF No. 1 ¶ 78.)

On February 17, 2021, a few days after the initial EEOC contact, Seel told Rivera that he would not present at an upcoming meeting even though Rivera was listed on the agenda. Instead, Seel chose a younger co-worker to present. Further, Rivera received conflicting guidance from Fiore and Seel about the direction of the UxAS Plan. Rivera submitted the UxAS Plan on March 1, 2021, and briefed the plan to Fiore, Seel, Barnes, and others on March 10, 2021. Two days before the briefing, on March 8, 2021, the supervisors reduced Rivera's time to present from one and a half hours to thirty minutes, which "[was] completely insufficient to convey the plan." (ECF No. 1 ¶ 51.) After the presentation on March 10, 2021, Seel told Rivera that "'the briefing did not go well.'" (*Id.* ¶ 52.) Rivera tried to explain that he only worked as a contributor on the project, and that the other two co-workers had the lead. On March 18, 2021, Seel and Fiore told Rivera that he had three and a half weeks to complete a detailed execution plan on the UxAS Plan, or else they would assign him elsewhere. Typically, such an execution plan takes much longer to develop, and the supervisors gave Rivera no support. On April 15, 2021, Rivera presented his execution plan, which met all the requirements.

A few weeks later, on April 28, 2021, Seel asked two Caucasian co-workers, Brian Albin (born in 1958) and Eric Stacey (born in 1984), to prepare the UxAS execution plan. On April 29, 2021, Seel told Rivera that Fiore "had personal issues" with Rivera and that "it is not fair to put

4

[Rivera] back in front of [Fiore]." (*Id.* ¶ 63.) On June 10, 2021, Seel officially removed Rivera from the lead position of the UxAS Plan, telling the team that he removed Rivera due to "'prejudicial issues with [Rivera] from command,'" who would "'not be receptive to [Rivera] presenting the UxAS[] strategy.'" (*Id.* ¶ 66.) Rivera did not present during the June 15, 2021 UxAS presentation to Fiore, Seel, and other leaders. Additionally, Seel and Fiore gave Albin and Stacey until September 2022 to finish the execution plan—much more time than they gave to Rivera to do the same. On June 27, 2021, Rivera met with Barnes to discuss "discrimination, hostile work environment, harassment[,] and reprisal" by Fiore and Seel. (*Id.* ¶ 71.) Barnes indicated that he knew "what can happen when" Fiore put "a 'target on your back.'" (*Id.*)

On October 14, 2021, "as reprisal for filing [an] EEO complaint," Seel noted on Rivera's 2022 performance objective that he needed to transition the lead of the project to Albin. (*Id.* ¶ 74.) In 2022, leaders in the organization excluded Rivera from numerous events, including an "executive review panel on Intelligent Automation;" a "major unmanned experimentation event;" and a visit to Carnegie Mellon University attended by all the other senior leaders, like Rivera, that focused on "unmanned/autonomous systems, Artificial Intelligence and software engineering." (*Id.* ¶¶ 76, 77, 81.) Also in 2022, Seel and Barnes informed Rivera that Jorge Hernandez would replace Rivera as the co-lead of a "key strategic thrust." (*Id.* ¶¶ 79–80.) Rivera initiated another EEOC complaint in October 2022, claiming race, national origin, and age discrimination as well as reprisal. (ECF No. 11-3, at 54.) In 2023, Rivera's co-workers and supervisors largely ignored Rivera's input and direction on various projects despite Rivera's status as "the senior most technical executive and leader on IA systems within the organization." (ECF No. 1 ¶ 82.)

In short, Rivera was dissatisfied with nearly everything that happened at work, and he blames it all on discrimination and retaliation.

## II. ANALYSIS[4]

In its motion to dismiss response to Rivera's Title VII and ADEA racial and age discrimination claims, DoD asserts that Rivera (1) did not exhaust his administrative remedies for the majority of the claimed instances of racial and age discrimination under Title VII and the ADEA; and, (2) even if he did exhaust his administrative remedies, he fails to meet the elements of those claims. DoD also argues that Rivera fails to plausibly plead the elements of his retaliation and hostile work environment claims.

### A. Title VII and ADEA Discrimination Claims

#### 1. Exhaustion of Administrative Remedies

"It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). Federal employees have 45 days from "the date of the matter alleged to be discriminatory" to initiate contact with an EEOC counselor regarding the matter. 29 C.F.R. § 1614.105(a)(1); *see Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004).

---

[4] A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Typically, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges [refer to] different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (omission in original) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). This results in a procedural bar "when the claims in [a plaintiff's] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (second alteration in original) (quoting *Chacko*, 429 F.3d at 508–10).[5] The framework provides some flexibility, however, for "hapless plaintiffs" who might otherwise fall victim to "overly technical concerns." *Sydnor*, 681 F.3d at 594. Thus, "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit." *Walton*, 33 F.4th at 172 (internal citation omitted) (alteration in the original).

Rivera first contacted an EEOC counselor to complain about racial and age discrimination on February 12, 2021, after Seel told Rivera that his "'job [was] at-risk.'" (ECF No. 1 ¶ 45.) Rivera then contacted an EEOC counselor again in October 2022 about Hernandez replacing him as team co-lead. DoD, therefore, contends that the 45-day timeline only allows the Court to consider possible discrimination that occurred between December 29, 2020 and February 12, 2021—45 days before the first EEOC contact—and conduct occurring up to 45 days before Rivera's October 2022 EEOC contact. Only three allegations of discrimination fall within those time periods: (1) Seel's February 2021 comment that Rivera's job was at risk; (2) Rivera's

---

[5] *See also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) (holding that Title VII's administrative exhaustion requirement does not constitute a jurisdictional requirement).

7

December 2020 low OC score that resulted in a $1,500 bonus; and (3) Rivera's September 2022 removal as team co-lead on a project.

The Court declines to limit its analysis to just those three events. In Rivera's 2021 EEOC complaint, he attaches a list of "contributing events and actions" to the alleged discrimination, including his 2019 year-end performance evaluation with Fiore, the 2019 reclama, his April 2020 transfer of departments, his August–September 2020 removal from the Intelligent Automation Strategic Thrust project, his 2020 low OC score, Seel's February 2021 "at-risk" comments, and the aftermath of the March 2021 OxAS Plan presentation. (ECF No. 11-3, at 18–22.) His EEOC complaints put DoD "on notice to investigate more than" Seel's February 2021 comments and the 2022 co-lead replacement. *Wilkinson*, 100 F. App'x at 158 (holding that the plaintiff's failure to initiate contact with an EEOC counselor within 45 days of every complaint did not preclude the district court from considering the previous alleged discriminatory conduct under the Rehabilitation Act). Additionally, each of Rivera's claims in this suit stem from essentially the same type of conduct by Rivera's supervisors, even when Rivera did not specifically mention additional instances in his EEOC complaints. Because Rivera asserts enough facts in his EEOC complaints to put DoD on notice of his claims and facts "reasonably related to the original complaint," the Court will consider all the factual allegations of Rivera's Complaint. *Walton*, 33 F.4th at 172 (internal citation omitted).

### 2. *Title VII Disparate Treatment Discrimination Claim*

Title VII prohibits employers from discriminating against an employee due to that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The statute applies to federal employers "through Title VII's federal-sector provision: 'All personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free

8

from any discrimination based on race, color, religion, sex, or national origin.'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e–16(a)). At the motion to dismiss stage, a plaintiff claiming Title VII harms does not need to demonstrate a *prima facie* case under the *McDonnell Douglas* burden-shifting framework "to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (noting that the plaintiff did not need to "plead facts that constitute a prima facie case" for the plaintiff's retaliation claim to defeat a motion to dismiss). The plaintiff still must allege facts, however, that establish "'a right to relief above the speculative level' that an employee suffered an adverse employment action because of the employee's membership in a protected class." *Carter v. Va. Dep't of Game and Inland Fisheries*, No. 3:16cv661, 2017 WL 4413192, at *11 (E.D. Va. Sept. 29, 2017) (quoting *Coleman*, 626 F.3d at 190)).

To establish disparate treatment, the plaintiff must show "(1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (citing *Coleman*, 626 F.3d at 190). Additionally, the plaintiff must show that the employer "had a discriminatory intent or motive for taking a job-related action." *Ricci v. DeStafano*, 557 U.S. 557, 577 (2009) (internal citations omitted).

In his Complaint, Rivera alleges that Seel removed Rivera from the UxAS Plan due to "'prejudicial issues with [Rivera] from command.'" He also notes that, after Seel told Rivera in February 2021 that his job "[was] at-risk," five other Caucasian co-workers did not have their employment "threatened." (ECF No. 1 ¶¶ 101–102.) He specifically asserts that Albin and Stacey,

both Caucasian, received "higher OC scores." (*Id.* ¶ 100.) He therefore argues that DoD's "failure to correct [Rivera's] OC score was . . . motivated by discriminatory animus." (*Id.* ¶ 103.)

Rivera's allegations fail to show any sort of racial discrimination or that the actions that his supervisors took against him occurred because of race. Rivera merely speculates that his employers must have racially discriminated against him due to race because he is the only Hispanic SSTM. But these types of "naked allegations" cannot support a disparate treatment racial discrimination claim. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). The Court, therefore, will grant the motion to dismiss as to Rivera's Title VII disparate treatment discrimination claim.

### 3. *ADEA Disparate Treatment Discrimination Claim*

The ADEA "prohibits employers from . . . discriminating against any person who is at least 40 years of age because of the person's age." *EEOC v. Baltimore County*, 747 F.3d 267, 272 (4th Cir. 2014) (internal quotations omitted). The statute applies to federal employers through the federal-sector provision. *See* 29 U.S.C. § 633a(a). A plaintiff suing under the ADEA need not plead a prima facie case of discrimination. *See Craddock v. Lincoln Nat'l Life Ins. Co.*, 533 F. App'x 333, 335–36 (4th Cir. 2013); *Swierkiewicz*, 534 U.S. at 515. But courts may review "the requirements of a prima facie case as a guide in assessing the plausibility of [a] plaintiff's claim for relief." *Georges v. Dominion Payroll Servs., LLC*, No. 3:16cv777, 2017 WL 3669029, at *4 (E.D. Va. Aug. 24, 2017) (emphasis added) (quoting *Craft v. Fairfax Cnty. Gov't*, No. 1:16cv86, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016)). "In order to make out a prima facie case under the ADEA, the Plaintiff must show that [he] (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting [his] employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably

10

than someone outside the protected class or someone 'substantially younger.'" *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 837 (E.D. Va. 2015) (internal citations omitted). "Although there is no 'bright line' rule for what age difference qualifies as 'substantially younger,' most courts agree that an age difference of ten years or more satisfies the fourth element." *Anthony v. Alexandria Pub. Schs.*, No. 1:22cv107, 2022 WL 2541914, at *9 (E.D. Va. July 7, 2022). But "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as [the plaintiff] has lost out *because of his age*." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decisions." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

At the motion to dismiss stage, Rivera need not make a prima facie case of age discrimination, he only needs to plausibly allege that DoD discriminated against him because of his age to survive the motion to dismiss. But Rivera does not plausibly allege such facts. Regarding age, Rivera specifically mentions that (1) younger SSTMs received higher bonuses annually; (2) a younger coworker replaced Rivera to present on the agenda in February 2021; and (3) Seel replaced Rivera on the UxAS Plan with Albin and a younger co-worker, Stacey. Rivera does not plead the ages of the younger people who received higher bonuses or the age of the co-worker who replaced him on the agenda for the meeting. But even if he did allege that those co-workers were substantially younger, his facts do not allege that age was the "but-for" cause. Additionally, regarding Rivera's removal from the UxAS Plan, Seel did not simply replace Rivera with Stacey, a man 17 years younger than Rivera. He also assigned Albin to the project, a man 9 years older than Rivera. Albin's role in the project undermines Rivera's claim that age

11

discrimination played a part in his removal. In other words, Rivera's facts do not plausibly allege that his employers took action against him because of age. Accordingly, the Court will grant the motion to dismiss as to the claim of age discrimination.

### B. Title VII and ADEA Retaliation Claims

Title VII and the ADEA additionally forbid an employer from retaliating against an employee who has previously opposed employer action that violates Title VII or the ADEA. *See* 42 U.S.C. § 2000e–3(a); 29 U.S.C. §§ 621 *et seq.* The federal-sector provisions of Title VII and the ADEA also incorporate retaliation claims. *See Laurent-Workman*, 54 F.4th at 212; 42 U.S.C. §§ 2000e–16(d), 2000e–5(g)(2)(A); 29 U.S.C. § 633a(a). The elements of a retaliation claim require the plaintiff to show that: (1) the plaintiff "engaged in a protected activity;" (2) the employer "took an adverse action against [him];" and (3) "there was a causal link between the two events." *Laurent-Workman*, 54 F.4th at 212; *see Walton*, 33 F.4th 165, 177 (applying the same elements to Title VII and ADEA retaliation claims).

Rivera filed two EEOC complaints that alleged racial and age discrimination—a protected activity. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (finding that a plaintiff who makes a "complaint[] of discrimination based upon race, color, religion, sex or national origin" has engaged in a Title VII protected activity); *Widmer v. Austin*, No. 1:21-cv-748, 2023 WL 2250283, at *6 (E.D. Va. Feb. 27, 2023) (finding that the filing of an EEOC complaint is a protected activity under the ADEA). He therefore meets the first element of a retaliation claim.

To allege an adverse action, the plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted).[6] Materially adverse actions comprise "ultimate employment decisions, such as an employer's desire to hire, fire, promote, or demote an employee," as well as "actions that have a 'significant detrimental effect' on an employee." *Widmer*, 2023 WL 2250283, at *7 (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). Adverse employment actions "include any acts or harassment [that] adversely [a]ffect[] the terms, conditions, or benefits of the plaintiff's employment." *Id.* (internal citations omitted) (alterations in the original).

Here, Rivera suffered several materially adverse employment actions. After filing the first EEOC complaint, no one ever corrected Rivera's 2020 OC score, which affected his bonus. Additionally, on February 17, 2021, days after the initial EEOC contact, Seel replaced Rivera with another coworker to present at a meeting. In March 2021, the month following Rivera's initial EEOC contact, Rivera's supervisors abruptly shortened his scheduled amount of time to present about the UxAS Plan. As a result, Rivera did not have enough time to properly present the material, and Seel and Fiore felt that the presentation did not go well. That presentation acted as a catalyst for a series of adverse events which ultimately ended with Rivera's removal and replacement from the UxAS Plan in June 2021. Moreover, one supervisor, Barnes, mentioned to Rivera that he knew "what can happen when" Fiore places "a 'target on your back.'" (*Id.* ¶ 71.) After Rivera initiated the second EEOC complaint in October 2022, his co-workers and supervisors began ignoring his input and direction on various projects. All of these employment

---

[6] The Fourth Circuit considered the question of whether the *Burlington Northern* "materially adverse" standard or a distinct "personnel actions" standard applies to federal employees' retaliation claims. *See Laurent-Workman*, 54 F.4th at 214–16. It held that *Burlington Northern*'s "materially adverse" standard properly encapsulates both private-sector and federal-sector retaliation claims. *Id.* at 216.

13

actions "[a]ffected the terms, conditions, or benefits of the plaintiff's employment." *Widmer*, 2023 WL 2250283, at *7. He therefore meets the second element of a retaliation claim.

Lastly, a plaintiff must demonstrate that a causal relationship existed between the employee's protected activity and the employer's adverse action. *See Roberts*, 998 F.3d at 122. A plaintiff can establish a causal connection between their protected activity and the employer's adverse action in two ways: (1) through establishing "the existence of facts that 'suggest[] that the adverse action occurred because of the protected activity,'" or (2) by alleging that the adverse act "bears sufficient temporal proximity to the protected activity." *Id.* at 123 (alteration in original) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x. 781, 784 (4th Cir. 2021)).

The above adverse actions all occurred in close temporal proximity to the initial EEOC contacts and complaints, particularly after the first EEOC contact in February 2021. The facts also suggest that these adverse employment actions occurred due to Rivera's EEOC complaints. Accordingly, Rivera meets the third element of a retaliation claim, and the Court will deny the motion to dismiss as to both the Title VII and ADEA retaliation claims.

### *C. Hostile Work Environment Claim*[7]

Finally, DoD argues that Rivera has failed to plausibly allege a hostile work environment claim based on (1) discrimination and (2) retaliation. The Court will consider each type of hostile work environment claim in turn.

---

[7] Rivera states that Count V of his Complaint asserts a Hostile Work Environment Claim under Title VII. But, in the paragraphs following Count V, Rivera speaks of both racial discrimination and age discrimination. The Court will, therefore, construe Rivera's allegations as a hostile work environment claim under both Title VII and the ADEA.

14

### *1. Discrimination*

To allege a hostile work environment claim based on discrimination, a plaintiff must plead facts showing that "(1) [he] experienced unwelcome harassment; (2) the harassment was based on [his] gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Desai v. DeJoy*, No. 1:22-cv-846, 2024 WL 3092403, at *8 (E.D. Va. June 20, 2024) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). Rivera asserts that Fiore and Seel's conduct "constituted unwelcome actions, comments, and behavior that was hostile toward [Rivera]," and that the effect of that conduct "deprived [Rivera] of equal employment opportunities and otherwise adversely affect[ed] his status as an employee because of his race (Hispanic) and age (over 40)." (ECF No. 1 ¶¶ 148, 150.)

At a minimum, Rivera did not plausibly plead that Fiore and Seel's conduct toward him "was based on [his] gender, race, or age." *Desai*, 2024 WL 3092403, at *8. "'Only harassment that occurs because of the victim's [protected class] is actionable.'" *Id.* (quoting *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997)) (alteration in the original). Rivera does not include any facts that indicate that either Fiore or Seel engaged in actions because of Rivera's age or race. The Court will, therefore, grant the motion to dismiss the hostile work environment claim as it relates to discrimination.

### *2. Retaliation*

To allege a hostile work environment claim based on retaliation, the plaintiff must allege "that the retaliatory conduct (1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Laurent-Workman*, 54 F.4th at 218. Rivera states in his

Complaint that DoD's "retaliatory actions" caused him to "suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish." (ECF No. 1 ¶ 153.)

In *Laurent-Workman*, the plaintiff, an African American woman working for the Army, sued her employer claiming, among other things, that the Army created a retaliatory hostile work environment under Title VII. *See* 54 F.4th at 207–08. After Laurent-Workman first complained to both her direct supervisor and then the supervisor above him about racial harassment by a co-worker, she experienced "alleged reprisals rang[ing] from erroneous reprimands to bogus denials of professional training opportunities to the alteration of work product in a manner damaging to [her] reputation, on top of additional meddling." *Id.* at 218. The Court found that, though "any one of these allegations does not amount to much when considered in isolation," considered together, "the allegations tell a multi-act story of undermining, gaslighting, and disruption" which would dissuade an employee from reporting discrimination. *Id.*

Viewing the facts in the light most favorable to Rivera here, Rivera initiated his first EEOC complaint for racial discrimination, age discrimination, and reprisal in February 2021. Days after initiating that complaint, Seel told Rivera that he would not present at an upcoming meeting that Rivera was already on the agenda for. Then, in March 2021, mere days before Rivera presented the UxAS Plan, Rivera's supervisors reduced his time to present from one and a half hours to thirty minutes, which did not allow Rivera proper time to fully brief the plan. Following the presentation, Seel told Rivera that it did not go well. He then told Rivera to complete a detailed execution plan within three weeks, when creating a plan of that magnitude can take months. Then, in June 2021, Seel removed Rivera from the project altogether, assigned the project to two other employees, and gave those employees 18 months to complete the execution plan. Supervisors also excluded Rivera from numerous events, including a visit to Carnegie Mellon University that all senior leaders

except for Rivera attended. Once Rivera initiated another EEOC complaint in October 2022, Rivera's co-workers and supervisors ignored his input or direction on projects.

Individually, these instances would not amount to a retaliatory hostile work environment. But in the aggregate, Rivera faced a multitude of challenges in his workplace following his EEOC complaints due to his supervisors removing him from projects, ignoring him, excluding him, and imposing difficult timelines that they did not impose on other employees. Such backlash would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* The Court, therefore, will deny the motion to dismiss regarding Rivera's retaliatory hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendant's motion to dismiss. The Court will grant the motion to dismiss Rivera's Title VII discrimination claims, ADEA discrimination claims, and hostile work environment claim based on discrimination. The Court will deny the motion to dismiss Rivera's Title VII retaliation claim, ADEA retaliation claim, and hostile work environment claim based on retaliatory conduct.

The Court will issue an appropriate Order.

Let the Clerk mail a copy of this Opinion to all counsel of record.

Date: 26 November 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge